CITY OF HAZEL PARK v POTTER

Docket No. 99886. Submitted April 20, 1988, at Detroit. Decided July
    5, 1988.

A majority of the Hazel Park City Council either retired or was
    not reelected on November 5, 1985. Between December 5, 1985,
    and December 31, 1985, the outgoing majority of the city
    council executed a written contract of employment with Hazel
    Park City Manager Dan W. Potter, who in previous years had
    been employed as city manager by virtue of oral contracts
    brought by motion at city council meetings. At the first meet-
    ing of the newly elected city council on January 1, 1986, the
    council voted to terminate Potter's employment, stating that he
    had committed malfeasance by entering into the written con-
    tract with the outgoing council. On January 17, 1986, the City
    of Hazel Park brought an action against Potter in the Oakland
    Circuit Court seeking a declaration that the written contract
    was void because it improperly infringed on the new council's
    right to appoint a city manager pursuant to the city charter.
    The trial court, Robert C. Anderson, J., granted summary
    disposition in favor of plaintiff, ruling that defendant had failed
    to state a valid defense.

    The Court of Appeals *held:*

    1. Generally, a municipal council cannot engage a public
    officer by contract for a term extending beyond that of its own
    members so as to impair the right of their successors to remove
    such officer and appoint another in his place.

    2. The Hazel Park City Charter provides the city council with
    power to select and appoint a city manager. The written
    contract between the outgoing council and defendant deprived
    the incoming council of its power of appointment.

    3. Defendant's act of entering into the written contract did

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political
    Subdivisions §§ 231 *et seq,* 309 *et seq.*

Term of office: power to appoint public officer for term commencing
    at or after expiration of term of appointing officer or body. 75
    ALR2d 1277.

not constitute an act of malfeasance, and the trial court erred in upholding defendant's dismissal on the basis of malfeasance.

Affirmed in part and reversed in part.

1. MUNICIPAL CORPORATIONS — CITY COUNCIL — PUBLIC OFFICERS — CONTRACTS.

Generally, a municipal council cannot engage a public officer by contract for a term extending beyond that of its own members so as to impair the right of their successors to remove such officer and appoint another in his place.

2. WORDS AND PHRASES — MALFEASANCE.

Malfeasance is evil doing, ill conduct, the commission of some act which is positively unlawful, or the doing of an act which a person ought not to do at all or the unjust performance of some act which the party had no right or which he had contracted not to do; it includes any wrongful conduct that affects, interrupts or interferes with the performance of official duties.

*Cooper, Shifman, Gabe, Quinn & Seymour* (by *Philip H. Seymour*), for plaintiff.

*John Katsoulos,* for defendant.

Before: CYNAR, P.J., and GRIBBS and T. GILLESPIE,* JJ.

CYNAR, P.J. Defendant, Dan W. Potter, appeals as of right from a March 25, 1987, order granting summary disposition in favor of the plaintiff, City of Hazel Park. We affirm in part and reverse in part.

Defendant was employed as city manager for plaintiff for thirteen years. All of defendant's contracts of employment between himself and plaintiff had been oral contracts brought by motion in the minutes of the city council meetings. On November 5, 1985, a majority of the city council was either defeated at the polls or retired. Between December 5, 1985, and December 31, 1985, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

outgoing majority of the city council executed a written contract of employment with defendant.

The employment contract contained several provisions, two of which are important for this appeal:

4. *Termination By City*—In accordance with the mandate of the City Charter, Manager shall serve at the pleasure of the City Council. Accordingly, without just cause, Manager's engagement may be terminated on not less than 90 days notice by the City, either personally delivered or mailed by registered or certified mail, return receipt requested. "Just cause" for purposes of this contract shall be defined as misfeasance, nonfeasance or malfeasance in the performance of duties required herein. In the event of termination, Manager at his option shall have the right to a public hearing before the City Council or to a private hearing before the City Council, said hearing to be scheduled within 30 days of Council action.

\* \* \*

12. *Severance Pay*—If the City terminates Manager's employment without just cause, prior to December 31, 1986, Manager shall be entitled to lump sum severance pay equal to one month's base salary for each year Manager has served the City in the capacity of Manager and one-half (½) month's salary for each full year Manager has served the City in any other full-time capacity. If the City terminates Manager's employment without just cause between January 1, 1987, and December 31, 1987, Manager shall be entitled to base severance pay equal to one-half (½) of the amount he would otherwise be entitled to if terminated without cause prior to December 31, 1986. In addition to base salary, severance salary shall include, in any case a continuation until December 31, 1987, payment of normal benefits afforded during the last year of actual employment, including, but not limited to, longevity, vacation, health insurance premiums, COLA, sick and other leave

time. In all other cases of termination of employment, Manager shall not be entitled to any severance pay.

On January 1, 1986, the newly elected city council took office. The first business meeting was held on January 13, 1986. At the meeting, the council voted to terminate defendant's employment on the basis that he committed "malfeasance." The council found that the entry into a contract of employment by defendant which did not comply with the applicable provisions of the city charter constituted malfeasance by the city manager.

On January 17, 1986, plaintiff commenced this action seeking a declaratory judgment on the validity of defendant's contract with plaintiff. In October, 1986, plaintiff moved for summary disposition alleging that defendant had failed to state a valid defense to the claim that the outgoing council was without authority to enter into the subject contract. Initially, on November 5, 1986, the trial court denied plaintiff's motion on the basis that good faith on the part of the previous council was an issue. Plaintiff moved for reconsideration. On March 25, 1987, the court entered an order granting plaintiff summary disposition. In the order, the trial court concluded that the contract in question was void, that the good faith of the outgoing city council was not relevant and that the new council was justified in terminating defendant's employment. Defendant subsequently filed the instant appeal.

The trial court granted plaintiff's motion for summary disposition on the basis that defendant failed to state a valid defense to plaintiff's claim that the contract improperly infringed upon the incoming council's right to appoint a city manager

pursuant to the city charter. A motion for summary disposition pursuant to MCR 2.116(C)(9), formerly GCR 1963, 117.2(2), for failure to state a valid defense tests the legal sufficiency of the pleaded defense. Such motion is tested by reference to the pleadings alone, with all well-pled allegations accepted as true. The proper test is whether defendant's defenses are "so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery." *Hanon v Barber,* 99 Mich App 851, 854-855; 298 NW2d 866 (1980). In addition, summary disposition is improper under this rule when a material allegation of the complaint is categorically denied. *Pontiac School Dist v Bloomfield Twp,* 417 Mich 579, 585; 339 NW2d 465 (1983).

The first issue for our determination is whether, on the pleadings alone, defendant has asserted a valid defense. In his pleadings and on appeal, defendant alleges that the contract in question is an "at will" contract. As such, the contract did not bind the incoming city council to a city manager appointed by the previous council because paragraph four of the contract provided that "[the] Manager shall serve at the pleasure of the City Council." Defendant argues that he is entitled to a hearing for a determination of whether the contract was executed in good faith.

Plaintiff, on the other hand, maintains that the severance pay provision removes the contract from the realm of being "at will." Under the provision, if the city manager's position is terminated without just cause, prior to December 31, 1986, the manager would be entitled to a specified amount of severance pay (in this case, a sum of $78,000). Plaintiff claims that this provision conflicts with § 6.1(b) of the city charter. Section 6.1(b) states:

> The City Manager shall hold office by virtue of
> appointment by the Council, which body shall also
> set his salary. He shall hold office at the pleasure
> of the Council. The City Clerk, City Treasurer,
> City Assessor, and City Attorney shall be ap-
> pointed by the City Manager with the approval of
> the Council, which body shall set the salaries for
> such officers.

The issue of whether an outgoing city council
may enter into an employment contract which
would bind a future city council is one of first
impression in Michigan. Thus, an examination of
other jurisdictions is appropriate. The general rule
appears to be as follows:

> With respect to the power of a municipal council
> to enter, in behalf of the municipality, into a
> contract which will extend beyond the term for
> which the members of the council were elected, a
> distinction is drawn based upon the subject matter
> of the contract—whether legislative or governmen-
> tal, or whether business or proprietary. Thus,
> where the contract involved relates to governmen-
> tal or legislative functions of the council, or in-
> volves a matter of discretion to be exercised by the
> council unless the statute conferring power to
> contract clearly authorizes the council to make a
> contract extending beyond its own term, no power
> of the council so to do exists, since the power
> conferred upon municipal councils to exercise leg-
> islative or governmental functions is conferred to
> be exercised as often as may be found needful or
> politic, and the council presently holding such
> powers is vested with no discretion to circumscribe
> or limit or diminish their efficiency, but must
> transmit them unimpaired to their successors. But
> in the exercise of the business powers of a munici-
> pal corporation, the municipality and its officers
> are controlled by no such rule, and they may
> lawfully exercise these powers in the same way,
> and in their exercise the municipality will be

governed by the same rules which control a private individual or a business corporation under like circumstances.

\* \* \*

Although a contrary view has been taken in some cases, the general rule followed in nearly all jurisdictions now is *that the appointment and removal of public officers is a governmental function, and a municipal council cannot engage a public officer by contract for a term extending beyond that of its own members, so as to impair the right of their successors to remove such officer and to appoint another in his place.* It has been held, however, that where the contract for services is not for services to be rendered during a particular period, but for the doing of a specified and particular act the performance of which may extend beyond the term of the municipal council, this rule does not apply. Also, it has been ordinarily held that the foregoing general rule has no application to persons holding a mere employment, such as schoolteachers. In such cases, a contract may be made extending beyond the term of the members of the council who make it. [Emphasis added. 56 Am Jur 2d, Municipal Corporations, § 154, pp 206-208.]

10 McQuillin, Municipal Corporations, § 29.101, p 467 states:

Statutes and charters sometimes authorize municipal boards to make contracts which will extend beyond their own official term, and the *power of the legislature in this respect is well settled.* Respecting the binding effect of contracts extending beyond the terms of officers acting for the municipality, there exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such

limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist. Consequently, although a contrary rule prevails as to contracts relating to business affairs, it is generally held that, independent of statute or charter provisions, the hands of successors cannot be tied by contracts relating to governmental matters.

The majority rule is followed in Arizona, *Tempe v Corbel,* 17 Ariz 1; 147 P 745 (1915), South Carolina, *Newman v McCullough,* 212 SC 17; 46 SE2d 252 (1948), and New York, *Morin v Foster,* 45 NY2d 287; 408 NYS2d 387; 380 NE2d 217 (1978).

The *Newman* court expressed the rationale behind the majority rule:

It is therefore clear that council has no authority to make such contract extending beyond its term of office; that the acts of former councils relating to the governmental functions of said councils which involve a matter of discretion to be exercised by such councils are without force and effect upon succeeding councils. The power conferred upon municipal councils to exercise legislative or governmental functions is done so to be exercised as often as may be found needful or politic; and the council holding such powers is vested with no authority to circumscribe, limit or diminish their efficiency, but must transmit unimpaired to their successors. That acting as a governmental agency, it is bound always to act as trustee of the power delegated to it and may not surrender or restrict any portion of such power conferred upon it. [*Newman, supra,* pp 25-26.]

Recently, the District Court of Appeals of Florida, 4th District in *Tweed v City of Cape Canaveral,* 373 So 2d 408, 409 (1979), held that the general rule was no longer going to be followed in Florida:

The question on appeal in this case is the same as the question presented in *City of Riviera Beach v Witt* [286 So 2d 574 (Fla App, 1979)] to-wit: Is a contract of employment of an employee performing a governmental function executed by a previous City Council binding upon the City after a new City Council is elected? A negative answer was rendered in *City of Riviera Beach v Witt, supra;* the City is not bound to honor the contract beyond the term of the City Council which undertook the contract.

We reach a different conclusion in this case because Section 166.021, *Florida Statutes* (1973) effectively redefines the authority of the City Council to enter into longer term governmental function contracts with employees and this statute was not considered in our decision in *City of Riviera Beach v Witt, supra,* and must be considered here. Although this statute can be characterized as an implementing statute under Art. VIII, Section 2(b), *Florida Constitution* we view it as expanding the authority of municipalities to govern and control themselves without state interference.

It should be noted that *Tweed* was based on a Florida statute. McQuillin indicates that "it is generally held that, independent of statute or charter provisions, the hands of successors cannot be tied by contracts relating to governmental matters." The minority view is followed in Minnesota. See *Manley v Scott,* 108 Minn 142; 121 NW 628 (1909).

After reviewing both the majority and minority views, we decide to adopt the majority view in Michigan. Therefore, the instant contract between defendant and the outgoing city council is void since it deprives the incoming council of its power to select and appoint a city manager as provided in the city charter. In addition, the contract is void on the basis of public policy grounds since it takes

away the governmental or legislative power of the incoming council to appoint and remove public officers. The trial court correctly found that the instant contract is void.

Secondly, defendant alleges that the trial court erred in upholding his dismissal on the basis of malfeasance. We agree.

Section 6.16 of the city charter provides, in relevant part:

> Notwithstanding any other provisions of this Charter, the tenure of office of the City Manager or any officer appointed by him, shall not be terminated for a period of not less than ninety (90) days after the date the new council takes office, except for misfeasance, malfeasance or nonfeasance in office.

Defendant was dismissed as city manager on the basis of malfeasance. The alleged malfeasance was his entry into the subject contract with the outgoing city council.

Black's Law Dictionary (4th ed), p 1109 defines malfeasance as follows:

> Evil doing; ill conduct; the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which person ought not to do at all or the unjust performance of some act which the party had no right or which he had contracted not to do. Comprehensive term including any wrongful conduct that affects, interrupts or interferes with the performance of official duties.

As the foregoing definition indicates, defendant's conduct would have to constitute some evil doing, ill conduct, etc., before he could be terminated from his position during a period of less than ninety days after the new council took office. We

are unable to conclude on this record that defendant's entry into this contract constituted an act of malfeasance. We construe the council's vote to terminate defendant's employment on January 13, 1986, as termination of an at will contract effective after expiration of ninety days after the new council took office.

Affirmed in part and reversed in part.