VANGUARD INSURANCE COMPANY v CLARKE

Docket No. 110598. Submitted June 14, 1989, at Lansing. Decided November 6, 1989. Leave to appeal applied for.

William Clarke returned home late one night, for some reason closed the door of his garage while his automobile was still running, apparently fell asleep and eventually died from carbon monoxide poisoning. At some undetermined time, his wife, Linda Clarke, apparently went into the garage to look for her husband and was overcome and killed by the carbon monoxide. The carbon monoxide fumes then flowed through the open door between the garage and house and killed their son, Brian Clarke, in the bedroom area of the house. Melinda Clarke, individually and as personal representative of the estates of Linda Clarke and Brian Clarke, brought a wrongful death action against Howard Linden in his capacity as personal representative of the estate of William Clarke, alleging that William Clarke was negligent in closing the garage door, failing to properly ventilate the garage, failing to warn Linda and Brian of the hazardous condition, causing lethal substances to enter the home, and operating the motor vehicle in a closed garage. The estate of William Clarke requested that Vanguard Insurance Company, issuer of a homeowner's insurance policy covering the Clarke home, defend and indemnify. Vanguard disclaimed any duty to defend and indemnify under the circumstances and commenced a declaratory judgment action in Oakland Circuit Court, seeking to have it declared that it had a duty neither to defend or indemnify the estate of William Clarke and naming Melinda Clarke in her individual and representative capacities and Howard Linden in his representative capacity as defendants. Defendant Clarke answered, claiming that the accident was factually and legally concurrently caused by a noncovered act, the operation of the automobile, and one or more covered acts and was thus subject to coverage

REFERENCES

Am Jur 2d, Insurance §§ 717, 1408, 1409, 1412; Summary Judgment §§ 27, 29.

Construction and effect of provision excluding liability for automobile-related injuries or damage from coverage of homeowner's or personal liability policy. 6 ALR4th 555.

under the policy issued by Vanguard. Vanguard moved for summary disposition both on the basis of the failure of defendant Clarke to state a valid defense and on the basis of the absence of any genuine issue of material fact. The trial court, John N. O'Brien, J., granted Vanguard's motion, holding that the policy language excluding coverage for injuries arising out of the use of a motor vehicle was not ambiguous and that the accident had a sole proximate cause, the operation of the motor vehicle. Defendant Clarke appealed.

The Court of Appeals *held:*

1. Summary disposition on the basis of failure to state a valid defense would be inappropriate under these circumstances because defendant Clarke categorically denied that the accident had as its sole proximate cause the operation of the automobile. Accordingly, the trial court, to the extent that it granted summary disposition on the basis of the failure to state a valid defense, erred in granting Vanguard's motion.

2. The duty to defend is distinct from the duty to indemnify. An insurer has a duty to defend if any theory of recovery against the insured falls within the coverage of the policy, even if other pled theories assert claims which are not within the coverage of the policy.

3. The doctrine of concurrent proximate cause is recognized in Michigan. Where an injury arises out of concurrent proximate causes, one of which is within policy coverage and one of which is excluded from policy coverage, an insurer is subject to liability under the policy on the basis of the proximate cause which is within the scope of the coverage of the policy. Since defendant Clarke in her underlying action pled facts that if proven would establish as concurrent proximate causes acts covered under Vanguard's policy, Vanguard had the duty to defend the estate of William Clarke.

Reversed.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAILURE TO STATE A VALID DEFENSE.

A motion for summary disposition for failure to state a valid defense tests the legal sufficiency of the pleaded defense; such motion is tested by the pleadings alone, with all well-pleaded allegations being accepted as true; the motion should be granted only where the defendant's defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiffs the right to recovery; such motion should not be granted where a material allegation of the complaint has been categorically denied (MCL 2.116[C][9]).

2. Motions and Orders — Summary Disposition — Issues of Material Fact.

A motion for summary disposition on the basis that there exists no genuine issue of material fact tests the factual support for a claim; in considering such a motion, the court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence and, giving the benefit of any reasonable doubt to the nonmoving party, must determine whether the type of record which might be developed would leave an open issue upon which reasonable minds might differ; courts should be liberal in finding a genuine issue of material fact (MCR 2.116[C][10]).

3. Insurance — Duty to Defend — Duty to Indemnify.

An insurer's duty to defend is altogether separate and distinct from its duty to indemnify; the duty to defend arises solely from the language of the insurance contract and is determined by the allegations in the complaint against the insured; an insurer has a duty to defend despite theories of liability asserted against the insured which are not covered under the policy if there are asserted any theories of recovery that fall within the policy coverage; any doubt as to an insurer's duty to defend should be resolved in favor of the insured.

4. Insurance — Homeowner's Insurance — Personal Injury — Excluded Coverage — Dual Causation.

An insurer under a homeowner's insurance policy which excludes from coverage injuries arising out of the ownership, operation or use of a motor vehicle may nevertheless be liable for coverage where the injury is jointly caused by the ownership, operation or use of a motor vehicle and an act which is within the scope of the coverage of the homeowner's policy.

*Conklin, Loesch & Caravas* (by *Erik Hildinger*), for plaintiff.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *George T. Sinas* and *David R. Brake*), for Melinda Clarke.

Before: Beasley, P.J., and McDonald and Murphy, JJ.

Murphy, J. Defendant Melinda Clarke appeals

as of right from an order of the trial court grant-
ing plaintiff's motion for summary disposition on
its complaint for declaratory judgment. The lower
court determined that the homeowner's insurance
policy issued by plaintiff did not provide coverage
requiring plaintiff to either defend or indemnify
the estate of William Gary Logan Clarke for the
claims brought by Melinda Clarke in an underly-
ing lawsuit which alleged negligence against her
father for the deaths of her mother and brother.
We reverse the trial court's order and hold that
plaintiff does have a duty to defend the insured in
the underlying action. However, resolution of the
indemnification issue is premature as there has
yet to be a determination of negligence and proxi-
mate causation for the alleged non-auto-related
acts of William Clarke.

The essential facts are not in dispute. The
Clarke family lived in a ranch house with an
attached two-stall garage. On the evening of
March 13, 1986, William Clarke went bowling and,
during the course of the evening, he drank several
beers. At approximately midnight, Clarke drove
home in his automobile. He apparently opened the
door to the garage with an automatic opener and
drove in. For some reason, he then closed the
garage door while the car was still running. Clarke
then apparently fell asleep. Carbon monoxide soon
filled the now closed garage, killing Clarke.
Clarke's wife, Linda, at an undetermined time,
went into the garage apparently to look for her
husband. The concentration of gases was so strong
that she was overcome almost immediately and
she, too, died from carbon monoxide poisoning.
Linda Clarke apparently left the door between the
garage and the house open and the carbon monox-
ide gases filled the house, killing Clarke's son,

Brian Clarke. Brian was found in the hallway outside one of the bedrooms.

The police were alerted to the scene when friends of William Clarke did not meet them as planned on the morning of March 14, 1986. The police found the keys to Clarke's car still in the ignition in the on position. The gas tank was approximately one-quarter full and antifreeze from the car had leaked on the floor. The car apparently stalled when it overheated after running for some time.

The ensuing investigation revealed no evidence of either foul play or suicide. The medical examiner determined that all three victims died as a result of accidental carbon monoxide intoxication. The medical examiner's report noted that William Clarke apparently closed the garage door and fell asleep. In addition, Linda Clarke apparently attempted to extricate her husband from the car and became overcome by carbon monoxide in the process. Finally, Brian Clarke died when the fumes spread throughout the home, rapidly reaching a lethal level.

The Clarkes' daughter, Melinda, who was away at college when the accident occurred, was later appointed the personal representative of the estates of her mother and brother. She filed a wrongful death action pursuant to MCL 600.2922; MSA 27A.2922, both individually and in her capacity as personal representative against the estate of her father, seeking damages from the accident which killed the remainder of her family. She alleged various acts of negligence were committed by her father, including (1) closing the garage door, (2) failing to ventilate the garage, and (3) failing to warn of the dangerous condition in the home. In response to this negligence suit, Vanguard Insurance Company filed the instant declaratory action

claiming that the allegations in Melinda Clarke's complaint did not fall within the coverage provided by the homeowner's policy. Vanguard asserted that the losses and damages claimed arose out of the ownership, maintenance, operation, and use of the motor vehicle and, therefore, it had no duty to defend or provide coverage for the incident.

Defendant Clarke answered, essentially claiming that the accident was factually and legally the result of one or more concurrent or primary causes that gave rise to coverage under the policy, notwithstanding the fact that a different concurrent or secondary cause may be excluded from coverage. Vanguard then moved for summary disposition on the grounds that defendant Clarke failed to state a valid defense, MCR 2.116(C)(9), and that there existed no genuine issue of material fact, MCR 2.116(C)(10). The trial court ruled in Vanguard's favor, summarily stating:

> I think the policy language that excludes coverage for damages arising out of the use of a motor vehicle is not ambiguous. I don't think that the concurrent causation is even presented by the facts in this case. I think the sole proximate cause was the operation of the motor vehicle. The motion will be granted.

Thereafter, the trial court entered an order declaring that plaintiff's policy does not provide coverage requiring plaintiff to either defend or indemnify the estate of William Clarke for the claims advanced in the underlying action.

On appeal, defendant Clarke essentially contends that the trial court erred in granting plaintiff's motion because, under a theory of dual or concurrent causation, plaintiff is not relieved of its obligation to provide coverage. We agree in part.

Initially, we note that the lower court's order is silent as to the grounds upon which it granted plaintiff's motion. Since the motion was brought both on the basis of failure to state a valid defense and on the basis of no genuine issue of material fact, we will analyze the court's order as if it granted the motion on both grounds.

A motion for summary disposition pursuant to MCR 2.116(C)(9), failure to state a valid defense, tests the legal sufficiency of the pleaded defense. Such motion is tested by reference to the pleadings alone, with all well-pled allegations accepted as true. The proper test is whether the defendant's defenses are "so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery." *Hazel Park v Potter,* 169 Mich App 714, 718; 426 NW2d 789 (1988). Moreover, summary disposition is improper under this rule when a material allegation of the complaint is categorically denied. *Pontiac School Dist v Bloomfield Twp,* 417 Mich 579, 585; 339 NW2d 465 (1983); *Hazel Park, supra,* p 718.

Paragraph nine of plaintiff's complaint alleged the following:

> That upon review, it is obvious that the alelgations [sic] contained in the Complaint of the said Melinda Clarke and the said Oakland County Circiut [sic] lawsuit do not fall within the coverage provided by the aforesaid insurance policy in that the losses and damages claimed arose out of the ownership, maintenance, operation and use of the motor vehicle belonging to the said William Gary Logan Clarke . . . .

Defendant's answer specifically denied the above allegation as being untrue. Since this paragraph asserts a material allegation relative to plaintiff's obligation under its contract of insurance, and

that allegation was categorically denied, it is clear that defendant did state a defense sufficient to withstand the motion for summary disposition on (C)(9) grounds. *Pontiac School Dist, supra.* Therefore, to the extent the trial court granted plaintiff's motion for failing to state a valid defense, we reverse the trial court's order.

Having determined that defendant stated a valid defense, we next must determine if there exists a genuine issue of material fact relative to plaintiff's claim that it has no duty to either defend or indemnify the estate of William Clarke.

A motion for summary disposition under MCR 2.116(C)(10), based on a lack of a genuine issue of material fact, tests whether there is factual support for the claim. The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. Giving the benefit of any reasonable doubt to the nonmoving party, the court must determine whether the type of record which might be developed would leave open an issue upon which reasonable minds might differ. *Fulton v Pontiac General Hosp,* 160 Mich App 728, 735; 408 NW2d 536 (1987). This Court is liberal in finding a genuine issue of material fact. *Rizzo v Kretschmer,* 389 Mich 363, 371-373; 207 NW2d 316 (1973).

Our discussion of this issue begins with the settled rule of law that an insurer's duty to defend is altogether separate and distinct from its duty to indemnify. *Stockdale v Jamison,* 416 Mich 217, 225; 330 NW2d 389 (1982); *Zurich Ins Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970); *Farmers & Merchants Mutual Fire Ins Co v LeMire,* 173 Mich App 819, 824; 434 NW2d 253 (1989). The duty to defend arises solely from the language of the insurance contract. *Stockdale, supra,* p 224. An insurer's duty to defend is determined by the

allegations in the complaint against the insured. *Frankenmuth Mutual Ins Co v Beyer,* 153 Mich App 118, 122; 395 NW2d 36 (1986). An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 142; 301 NW2d 832 (1980); *Dochod v Central Mutual Ins Co,* 81 Mich App 63, 67; 264 NW2d 122 (1978). This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. *Detroit Edison, supra,* p 142. The duty to defend is broader than and not necessarily conclusive of an insurer's duty to indemnify. The court must resolve any doubt pertaining to the duty to defend in favor of the insured. *Allstate Ins Co v Freeman,* 432 Mich 656, 662; 443 NW2d 734 (1989).

In this case, the underlying second amended complaint against the estate of William Clarke alleges several acts of negligence by William Clarke. Specially, Melinda Clarke alleged the following:

> That Defendant's decedent breached his duties to Plaintiff and Plaintiff's decedents, and was, therefore, negligent and grossly negligent in various ways including, but not limited to, the following:
> (a) by closing the garage door of the family home with the car engine running inside;
> (b) by failing to properly ventilate the garage;
> (c) by failing to warn Linda Lee Clarke and Brian Jay Clarke of the hazardous condition existing on the premises of the family home;
> (d) by causing lethal substances to enter the premises of the family home;

(e) by operating the motor vehicle in the closed garage.

Vanguard's homeowner's policy provided the following personal liability coverage:

COVERAGE E—PERSONAL LIABILITY

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this Insurance applies, caused by an occurrence. *This Company shall have the* right and *duty,* at its own expense, *to defend any suit against the insured seeking damages on account of such bodily injury* or property damage, *even if any of the allegations of the suit are groundless, false or fraudulent,* but may make such investigation and settlement of any claim or suit as it deems expedient. This Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of this Company's liability has been exhausted by payment of judgments or settlements. [Emphasis added.]

However, the policy contains a standard automobile exclusion provision, which in pertinent part provides:

This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

\* \* \*

(2) any motor vehicle owned or operated by, or rented or loaned to any insured; but this subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle regis-

tration because it is used exclusively on the residence premises or kept in dead storage on the residence premises.

The trial court stated three things in resolving the motion for summary disposition in plaintiff's favor. First, the policy's exclusionary language is not ambiguous. We agree with this conclusion and will not address the ambiguity argument raised on appeal. Simply, we do not believe that there is any ambiguous language which requires construction. See *Allstate Ins Co v Freeman, supra,* pp 665-667. Second, the lower court stated that concurrent causation is not presented by the facts of this case; and, third, the court stated that the sole proximate cause of the accident was operation of the motor vehicle. We disagree with the trial court's second and third statements. We believe that arguably there was more than one cause of this accident and, by our recognizing the theory of dual or concurrent causation, plaintiff has a duty to defend against the acts of negligence pled by Melinda Clarke in the underlying action.

Defendant Clarke argues that the excluded act of William Clarke's negligent use of his automobile was only one of the proximate causes of the accident. Another proximate cause of the accident was a covered act, that is, William Clarke's negligent closing of the garage door. Defendant Clarke contends that, had William Clarke not closed the garage door while the car was running, the carbon monoxide gases would never have accumulated in the garage and house at lethal levels. Simply, since there was a confluence of both a covered negligent act, the closing of the garage door, and an excluded negligent act, operation of the motor vehicle, there is a duty to defend and indemnify.

Plaintiff contends that there was only one proxi-

mate cause of this loss, that is, the operation of the motor vehicle. Moreover, this loss was so clearly caused by "operation and use" of an automobile that the policy's exclusion precludes all coverage.

After thoroughly examining case law from numerous jurisdictions and federal circuits, we are persuaded that Melinda Clarke's assertion of the claim that William Clarke was negligent in closing the garage door is arguably within the coverage provided by plaintiff. Therefore, on the facts of this case, plaintiff has a duty to defend against the negligence counts in the underlying action. In reaching this conclusion, a discussion of dual or concurrent causation, and our application of this theory, is in order.

The seminal case on dual causation is *State Farm Mutual Automobile Ins Co v Partridge,* 10 Cal 3d 94; 109 Cal Rptr 811; 514 P2d 123 (1973). In *Partridge,* the insured was out at night hunting rabbits with a .357 magnum pistol. Partridge had earlier filed the trigger mechanism of his pistol to lighten the trigger pull so that the gun would have "hair-trigger action." Two friends were sitting on the front seat of Partridge's Ford Bronco while hunting. Partridge spotted a running jack rabbit crossing the road and, in order to keep the rabbit within the car's headlights, Partridge drove off the paved road onto the adjacent rough terrain. The vehicle hit a bump, the pistol discharged, and a bullet entered a passenger, resulting in paralysis. The injured passenger filed a personal injury action against Partridge.

The plaintiff, State Farm, which had issued both the automobile and homeowner's policy to Partridge, filed a declaratory judgment action claiming that the homeowner's policy excluded personal liability coverage for bodily injury arising out of

the ownership, maintenance, operation or use of any motor vehicle. State Farm argued that, since the operation and use of the vehicle played a causal role in the accident, the injuries arose out of the use of the vehicle within the meaning of the policy exclusion. The defendants countered that both the negligent filing of the trigger mechanism and the negligent driving were concurrent causes of the accident and, therefore, there was coverage under the policy. The *Partridge* court agreed, stating that coverage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury. The court concluded that, although the homeowner's policy excluded injuries "arising out of the use" of an automobile, such an exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause. The court also explained that the "use" of Partridge's car was not the sole cause of the passenger's injuries, but was only one of two joint causes of the accident:

> Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). *Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy.* [10 Cal 3d 102; emphasis added.]

Courts in several states have adopted the dual

causation theory set forth in *Partridge*,[1] although there is no uniform application of the doctrine. Our research has revealed that there is some debate not only over the scope of the holdings in *Partridge*, but also over the analysis to be applied. In addition, there is no consensus on what differentiates "auto-related" from "non-auto-related" conduct when examining the standard homeowner's clause which excludes personal liability coverage for injuries arising out of the ownership, maintenance, operation or use of a motor vehicle.[2] Despite the somewhat unsettled nature of the interpretation and application of the *Partridge* case, we believe that the theory of dual causation is clearly viable and should be recognized in this jurisdiction. In brief, if an occurrence is caused by a risk included within the policy, coverage is not vitiated merely because a separate excluded risk constitutes an additional cause of the occurrence.

The crucial inquiry in applying *Partridge* to the facts of this case is whether the closing of a garage door with a vehicle running inside amounts to an insured risk.

First, simply examining the act of closing a garage door, it is undeniably an act which can give rise to liability under the homeowner's policy. Vanguard admits that if William Clarke shut the garage door on someone, resulting in injury, there would be personal liability coverage for William

[1] See *Waseca Mutual Ins Co v Noska*, 331 NW2d 917 (Minn, 1983), and cases cited therein; *U S Fidelity & Guaranty Co v State Farm Mutual Automobile Ins Co*, 107 Ill App 3d 190; 437 NE2d 663 (1982); *LeJeune v Allstate Ins Co*, 365 So 2d 471 (La, 1978); *Houser v Gilbert*, 389 NW2d 626 (ND, 1986); *Lawver v Boling*, 71 Wis 2d 408; 238 NW2d 514 (1976); *Scottsdale Ins Co v Van Nguyen*, 763 P2d 540 (Ariz App, 1988); *Unigard Mutual Ins Co v Abbott*, 732 F2d 1414, 1416 (CA 9, 1984).

[2] See anno: *Construction and effect of provision excluding liability for automobile-related injuries or damage from coverage of homeowner's or personal liability policy*, 6 ALR 4th 555.

Clarke's negligent act. Second, it is also evident that the accident in this case would never have happened without the concurring events of both the operation of the motor vehicle and the closing of the garage door which trapped the lethal gases. Simply, without the garage door's being closed, the carbon—monoxide gases never would have been concentrated in toxic levels. It is also apparent that Vanguard would provide coverage if the garage door was negligently closed while many other types of carbon monoxide producing engines were running, such as ones found on a lawn mower, tractor, unregistered motor vehicle, generator, or go-cart.

Several cases which have applied the theory of dual causation support the application of that theory to the facts of this case and support the conclusion that the act of closing the garage door, with the car engine running inside, can be viewed as a non-vehicle-related act.

The Minnesota Supreme Court in *Waseca Mutual Ins Co v Noska,* 331 NW2d 917 (Minn, 1983), recognized concurrent coverage of automobile and homeowner's insurance policies for vehicle-related injuries. In *Noska,* the insured loaded six fifty-five-gallon steel barrels full of burnt material, including ashes, and drove at approximately thirty-five miles per hour to a landfill six miles away. As he drove, ashes flew from the uncovered barrels and started fires at several points adjacent to the highway which burned for at least nine days, covering thousands of acres of land and damaging or destroying numerous farm properties and homes. Noska was covered by three insurance policies— automobile, business, and homeowner's. The court noted that the case involved an extraordinary fact pattern: two separate and independent acts concurred to cause the accident, and each act was

necessary to cause the damage. *Id.,* p 920. The court held that the homeowner's insurer could not deny coverage based on a policy exclusion for claims arising out of the use, maintenance, operation, loading or unloading of automobiles. The Minnesota Supreme Court reasoned that the homeowner's insurer had agreed to pay such damages for which Noska might become liable where such damages arose from non-automobile-related causes and had accepted a premium for assuming this risk. The act of placing live embers in an uncovered barrel with other debris was the cause of the fire and was non-automobile-related. The court concluded that the homeowner's policy should cover this risk, without regard to the intervention of another contributing cause which admittedly was not covered. *Id.,* p 923.

Two years later, Minnesota was faced with another dual causation case, somewhat analogous to the case at bar, which lends credence to the view that closing a garage door is a non-vehicle-related act.

In *Jorgensen v Auto-Owners Ins Co,* 360 NW2d 397 (Minn App, 1985), Tim Jorgensen, to get a ride home, went to a gas station where his father, Robert, worked. Just before Tim arrived, his father had placed a six-gallon can of gasoline for their home lawn mower in the trunk of his Oldsmobile. Robert asked Tim to retrieve his set of jumper cables from the trunk to lend to a customer. When Tim turned the trunk key, he heard a "pop" and the trunk exploded open. Tim was not hurt, although the trunk was immediately engulfed in flames. Fearing that the car might blow up and cause the gas station to explode, Tim reached into the trunk to remove the gas can. In doing so, gasoline spilled over his body igniting his clothing, badly burning and scarring him. The parties

agreed that a frayed wire connected to the trunk light had caused a spark or an explosion of the light bulb which ignited the gasoline fumes.

In addition to seeking and eventually obtaining no-fault benefits, Tim brought an action against his father, alleging negligent maintenance of the car and negligent supervision of himself. In holding that the standard homeowner's automobile exclusion did not preclude coverage, the court stated:

> Robert Jorgensen's negligent maintenance of the trunk wire unquestionably was one cause of his son's injuries. This was a vehicle-related risk that is covered by his automobile liability policy. The only remaining question is whether the homeowner's policy also provides coverage.

> \* \* \*

In *Waseca Mutual [Ins Co v Noska,* 331 NW2d 917 (Minn, 1983)] Noska had a homeowner's policy with an identical exclusion clause. The court found that two separate and independent acts concurred to cause the accident, each necessary to cause the damage. *Id.* at 920. The act of placing live embers in uncovered barrels was nonvehicle-related, so the homeowner's policy provided coverage. *Id.* at 923. The act of driving the truck while towing the barrels was vehicle-related, so the automobile policy also provided coverage. *Id.* at 920.

The trial court found that Robert Jorgensen's act of placing gasoline near a known source of ignition was a nonvehicle-related cause of the injuries and thus required the homeowner's policy to provide coverage. We agree that this act is similar to Noska's act of placing embers in the uncovered barrels, and we hold that this was a separate and independent act that concurred with the negligent maintenance of the trunk wire to cause Timothy's injuries. We agree with the court's conclusion in *Waseca Mutual* that "[the homeowner's insurer] should not be excused

from its obligation to defend the action or pay benefits until it has been determined that the injuries did not result, *even in part,* from a risk for which it provided coverage and collected a premium."
*Id.* at 923 (quoting *Lawver v Boling,* 71 Wis 2d 408, 422-423; 238 NW2d 514, 521-522 (1976) (emphasis supplied by *Waseca Mutual* court). [*Id.,* p 401.]

We believe that, if the act of placing a gasoline can in an automobile trunk near a known source of ignition has been held to be a non-vehicle-related act, the closing of a garage door when a vehicle is running inside is likewise a non-vehicle-related act.

Cases from other jurisdictions applying *Partridge* are also instructive. In *U S Fidelity & Guaranty Co v State Farm Mutual Automobile Ins Co,* 107 Ill App 3d 190; 437 NE2d 663 (1982), the plaintiff insurer brought a declaratory judgment action against the defendants for a determination of whether it owed a duty to defend and a duty to indemnify under a policy issued to a day-care center. The underlying complaint alleged a personal injury action brought on behalf of a four-year-old which arose out of injuries incurred when an employee of the day-care center drove some children to a dance class in an auto owned by the center. The four-year-old was injured when she "fell from, was thrown from, or otherwise exited" from the automobile. The Illinois Court of Appeals, relying on *Partridge, supra,* reversed the trial court's order of summary disposition in the insurer's favor, stating:

In the present case, the complaint alleges negligent acts which are potentially within the coverage of the policy, such as the failure to adequately supervise the children and the negligent operation

of the day care center. These alleged acts are separate and distinct from any allegations relating to the negligent operation of the automobile. If it is ultimately determined that the insureds are guilty of these acts, USF&G could be liable under the policy. In other words, if the liability of an insured arises from negligent acts which constitute non-auto-related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence. *If an occurrence is caused by a risk included within the policy, coverage is not vitiated merely because a separate excluded risk constitutes an additional cause of the occurrence.*

Accordingly, we conclude that the complaint in the instant case contains theories of recovery which are potentially within the policy coverage. [107 Ill App 194; emphasis added.]

In *Scottsdale Ins Co v Van Nguyen,* 763 P2d 540 (Ariz App, 1988), a housemover, Jenkins, was electrocuted while helping transport a two-story house. At the time of his death, Jenkins was standing on top of the house when the steel guidepoles attached to the house came in contact with a power line. The house had been jacked up on dollies and placed on beams and was being towed by a vehicle at the time of Jenkins' death. Jenkins' spouse brought a wrongful death action against the moving company and the driver of the vehicle. The plaintiff insurer argued that, because the use of the vehicle was causally connected to the liability-producing event, the standard automobile exclusion applied to deny coverage under the general liability provisions of the policy. The *Scottsdale* court disagreed, concluding that where concurrent negligence has been established, despite the presence of a causal connection between the negligent use of the automobile and the accident, a policy exclusion does not preclude coverage when an

accident results from the concurrence of a non-auto-related cause and an auto-related cause. Coverage cannot be defeated simply because a separate excluded risk constitutes an additional cause of injury. *Id.,* pp 541-542, citing 7A Appleman's, Insurance Law & Practice, § 4500, p 179.

The *Scottsdale* court also cited and relied upon *Gonzalez v St Paul Mercury Ins Co,* 60 Cal App 3d 675; 131 Cal Rptr 626 (1976), where the exclusion cause in a homeowner's policy did not bar coverage with respect to liability for an accident occurring when, as a result of the insured's negligence in repairing his automobile brakes on the insured's premises, the insured struck and killed the plaintiff's son while driving a car at a point away from the premises. The insured's liability arose from concurrent causes; he negligently drove the automobile at the time of the accident and he negligently repaired the brakes some five weeks earlier. The *Scottsdale* court importantly noted and summarized some of the ongoing debate over not only the holdings in *Partridge* but its application as well:

> In *Gonzalez,* the California Court of Appeals relied upon *State Farm Mutual Auto Ins Co v Partridge,* 10 Cal 3d 94; 109 Cal Rptr 811; 514 P2d 123 (1973). The *Gonzalez* court reasoned that in *Partridge,* "an accident covered by an automobile policy may nevertheless be covered by a homeowner's policy if concurrent causes of the injury arise from conduct insured by both." *Gonzalez v St Paul Mercury Ins Co,* 60 Cal App 3d 680; 131 Cal Rptr 628.
>
> In *Partridge,* . . . [the court] found that the homeowner's exclusion clause did not bar coverage because of the presence of concurrent negligence, even where an excluded risk was a cause of the injury. The court noted that there were two dis-

tinct acts of negligence by the insured, one auto-related and one non-auto-related.

It is the interpretation of this auto vs. non-auto distinction that provides the split of authority between the California Court of Appeals. The *Gonzalez* court noted that the insurer sought to avoid:

". . . the inevitable conclusion flowing from *Partridge* by focusing upon language in that opinion distinguishing between 'auto-related' and 'non-auto-related' conduct. [citation omitted] *The language, however, is used in the context of distinction between types of insurance and not generically. The import of the words used is that an accident covered by an automobile policy may nevertheless be covered by a homeowner's policy if concurrent causes of the injury arise from conduct insured by both.*"

*Gonzalez v St Paul Mercury Ins Co,* 60 Cal App 3d at 680; 131 Cal Rptr at 629. *In Gonzalez, if the car had never been driven, no injury would have resulted from the negligent repair of brakes. Similarly, in the instant case, if the house had not been moved, no injury would have resulted from its negligent loading and preparation.* We agree with the conclusion of the *Gonzalez* court and apply its reasoning in barring the exclusion clause in the present case. See also *State Farm Fire & Casualty Co v Kohl,* 131 Cal App 3d 1031; 182 Cal Rptr 720 (1982) (exclusion not applied where driver negligently drags injured victim from road after collision; no injury could have resulted absent vehicular negligence, as in the instant case).

*There is a split of authority on this issue, not only between various jurisdictions, but within the California Court of Appeals itself.* In *State Farm Fire and Casualty Co v Camara,* 63 Cal App 3d 48; 133 Cal Rptr 600 (1976), the third district of the Court of Appeals disagreed with the *Gonzalez* court (second district) in holding that for the exclusion clause to be barred, the liability must arise from nonvehicular conduct and must exist independently of use of ownership of a vehicle. The *Camara* court cites *Partridge* as authority for this

proposition. We disagree that *Partridge* sets forth such an absolute rule.

The *Gonzalez* reasoning is also exemplified in other jurisdictions. In *Pennsylvania General Ins Co v Cegla,* 381 NW2d 901 (Minn App, 1986), the Minnesota Court of Appeals found a similar exclusion clause not applicable where a motorcycle rider was killed as a result of negligent loading of a roll of wire mesh into a truck, which subsequently rolled onto the highway, causing the death of the motorcycle rider following behind the truck. The court found concurrent negligence between the nonvehicular act (negligently loading the mesh) and the vehicular act (driving). *Cegla* is analogous to the instant case. See also *Waseca Mutual Ins Co v Noska,* 331 NW2d 917 (Minn, 1983); *Frazier v State Farm Mutual Auto Ins Co,* 347 So 2d 1275 (La App, 1977), cert den 351 So 2d 165 (La, 1977) (exclusion barred where small child was run over by automobile of insured where insured was also responsible for attending the child and negligently did so); *Cooperative Fire Ins Co of Catskill, NY v Vondrak,* 74 Misc 2d 916; 346 NYS2d 965 (1973). [763 P2d 542-543; emphasis added.]

Turning to Michigan law, this Court has once before addressed the *Partridge* dual causation theory in dicta and refused to apply it "because the non-auto-related negligence is connected to the use of a motor vehicle." *State Farm Fire & Casualty Co v Huyghe,* 144 Mich App 341, 347; 375 NW2d 442 (1985). Implicitly, this Court in *Huyghe* followed the view espoused by the third district of the California Court of Appeals in *State Farm Fire & Casualty Co v Camara, supra.* That is, the liability must arise from nonvehicular conduct and must exist *independently of use or ownership of a vehicle.*

In *Huyghe,* the defendant, Julia Daubenspeck, was injured when she was struck in the back of

the head by a cleat, which was attached to the Huyghe's house to secure a clothesline attached between the house and garage. The cleat was pulled free when the defendant's son-in-law drove his pickup truck under the clothesline. The Daubenspecks alleged that the Huyghes had negligently maintained the premises and negligently located and installed the clothesline and cleat because the defendant John Huyghe regularly drove his truck under the clothesline between the house and garage. The *Huyghe* panel, without any formal discussion, simply concluded that the negligence could not arise without a motor vehicle. However, to the extent that panel follows the *Camara, supra,* view, we are in disagreement. We note that application of the dual causation view employed in *Huyghe* would clearly lead to no coverage when examining the facts of the cases previously discussed which found the automobile exclusion did not preclude coverage.

Despite the somewhat unsettled interpretation and application of the theory of dual causation, what remains clear is that the doctrine is reserved for extraordinary fact patterns, that is, where two separate and independent acts concur to cause the injury or loss and each act was necessary to cause the loss. In addition, each of the concurrent causes must be a proximate cause of the loss.

We emphasize that this opinion should not be construed in any way as an invitation for suits to be brought claiming coverage under the general liability provisions of a homeowner's policy for incidents involving typical garden-variety automobile accidents. Our research has revealed that the parameters of dual causation have been tested in the states which have adopted it and we acknowledge that certain limitations on its application might be necessary. Nonetheless, on the facts of

this case, we are clearly confronted with an extraordinary fact pattern which we conclude falls within the existing parameters of dual causation as interpreted by the states which have adopted the theory.

Next, it is important to clarify that *Partridge* and many cases interpreting and applying its rationale speak in terms of the "liability" of the insurance company once the exclusion is found not to apply. While it is plausible to conclude that an insurance company's liability under a policy equates to a duty to both defend and indemnify, that cannot yet be said in this case.

For example, in *Partridge*, there was a lower court finding that the filing of the gun's trigger mechanism constituted a negligent act. In *Jorgensen, supra,* the trial court found the act of placing gasoline near the source of ignition was a non-vehicle-related act. Therefore, the non-auto-related negligence had been established. In the case at bar, the alleged non-auto-related act of negligence of closing the garage door has not been established. The Illinois court in *U S Fidelity & Guarantee, supra,* stated that, if it is ultimately determined that the insured is guilty of the non-auto-related conduct (inadequate supervision of the children), the insurer could be liable in that it would have a duty to indemnify under the policy. That is the same situation in this case. If William Clarke's act of closing the garage door is determined by the trier of fact to be a negligent act which was a proximate cause of the injuries, then there is a duty to indemnify. See also *Allstate Ins Co v Freeman, supra,* 432 Mich 701, n 1. However, as for plaintiff's duty to defend, we conclude that the negligence allegations in the underlying complaint arguably come within the liability coverage of the policy. *Detroit Edison, supra.*

In conclusion, several jurisdictions have adopted the theory of dual causation and we hold that dual causation is a viable theory in this state. Toward that end, we hold that the trial court erred in granting plaintiff's motion for summary disposition after summarily concluding that the facts of this case did not present a situation of dual causation and that there was only one proximate cause of the accident. Plaintiff has a duty to defend in this case because in the claims asserted by Melinda Clarke in the underlying action negligent acts within the coverage of the policy have been alleged.

The lower court's order granting declaratory judgment is reversed and this matter is remanded for further proceedings in the underlying action.