Charles L. Robinson, CPA, CFE Legislative Auditor Division of Legislative Audit 172 State Capitol Little Rock, AR 72201-1099
Dear Mr. Robinson:
I am writing in response to your request for my opinion on the following five questions:
 1. May city managers, other city employees, or county employees be employed pursuant to a contractual relationship?
 2. Are city managers and other public employees (municipal, county, and school employees) considered "employees-at-will"?
 3. May a city pay severance packages to a city manager or other terminated, retiring, or resigning employees?
 4. May a county pay severance packages to terminated, retiring, or resigning employees?
 5. May a school district pay severance packages to terminated, retiring, or resigning employees?
RESPONSE
In my opinion, the answer to your first question is "yes." The answer to your second question is also "yes," unless the employer has contracted that dismissal will be only for cause. City managers are at-will employees pursuant to statute. A.C.A. § 14-47-119(e). By contrast, a teacher may be terminated during the term of a contract only for cause or if there is a district-wide reduction in certified staff. A.C.A. §6-17-1507(a), as amended by Act 1739 of 2001. With respect to your final three questions, the Code does not address whether it is permissible to make severance payments to public employees. Although I cannot formally opine on this issue in the absence of legislative or judicial guidance, I believe offering a severance package to a city, county or school-district employee may at some point transgress constitutional restrictions depending on its particular terms. I cannot predict the outcome of such a challenge in the abstract.
Question 1: May city managers, other city employees, or county employeesbe employed pursuant to a contractual relationship?
In my opinion, the answer to this question is clearly "yes." Section14-54-101 of the Arkansas Code expressly authorizes cities to enter into contracts. The only condition on this power is that the contract must relate to municipal affairs. A.C.A. § 14-42-307(a)(1). This power is sufficiently broad to extend to contracts with necessary public employees. With respect to counties, A.C.A. § 14-41-801 provides in pertinent part:
 (a) As provided by Arkansas Constitution, Amendment 55, Section 1, Part (a), a county government, acting through its county quorum court, may exercise local legislative authority not expressly prohibited by the Arkansas Constitution or by law for the affairs of the county.
(b) These powers include, but are not limited to, the power to:
* * *
 (2) Appropriate public funds for the expenses of the county in a manner prescribed by ordinance;
* * *
(6) Fix the number and compensation of deputies and county employees;
* * *
 (10) Provide for any service or performance of any function relating to county affairs;
* * *
 (13) Exercise other powers, not inconsistent with law, necessary for effective administration of authorized services and functions.
This grant of authority empowers a county to contract with its employees regarding the terms of their employment. The fact that certain terms of employment such as salary are determined by ordinance rather than individualized negotiation does not render the relationship between the employee and the county something other than contractual in nature.
Question 2: Are city managers and other public employees (municipal,county, and school employees) considered "employees-at-will"?
The employment-at-will doctrine was most recently set forth in Palmer v.Council On Economic Education, 344 Ark. 461, 468-69, 40 S.W.3d 784
(2001):
 Our well-established rule is that when an employee's employment is for an indefinite term, either party may terminate the relationship without cause or at-will. Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988). We modified the employment-at-will doctrine to provide that where an at-will employee (one employed for an indefinite term) relies on a personnel manual or employment agreement that expressly states that he or she cannot be discharged except for cause, the employee may not be arbitrarily discharged in violation of such a provision. Id.
In Sterling, supra, we stated:
 [W]e have no hesitancy in concluding that Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.
In light of this principle, I believe any public employee hired for an indeterminate term is an employee at will unless either his contract specifies otherwise, a statute specifies otherwise or one of the exceptions recited above applies.
Specifically with respect to the position of city manager, I should note that A.C.A. § 14-47-119(e), as amended by Act 1790 of 2001, provides:
 The board, on the vote of a majority of its elected membership, or the mayor, if authorized pursuant to subsection (a) of this section, may terminate the city manager's employment at any time, either with or without cause.
As the court noted in Woodend v. Southland Racing Corp., 337 Ark. 380,384, 989 S.W.2d 505 (1999):
 It is . . . well settled that the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract. Mahurin v. Oaklawn Jockey Club, 299 Ark. 13, 771 S.W.2d 19
(1989).
By statute, then, the city manager is an at-will employee.[1]
An the other hand, nonprobationary school teachers are afforded a limited degree of job security pursuant to A.C.A. § 6-17-1507(a), as amended by Act 1739 of 2001, which provides:
 A teacher may only be terminated during the term of any contract when there is a reduction in certified staff or for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated material neglect of duty, or other just and reasonable cause.
Question 3: May a city pay severance packages to a city manager or otherterminated, retiring, or resigning employees?
Although the Arkansas legislature and courts have yet to address the issue, I believe there is some question whether a city can award a severance package to a city manager or other city employee. Subsection14-47-119(d) of the Code provides that "[t]he city manager shall receive a salary in such amount as may be fixed by the board." The term "salary" denotes "a fixed compensation periodically paid to a person for regular work or services." Random House Webster's Unabridged Dictionary (2d ed. 1999). This definition does not include additional compensation at the time employment ends. See also A.C.A. § 14-43-409 (officers in cities of the first class "shall receive such salary as the council of any city may designate, and in no instance shall they receive an additional compensation by way of fees, fines, or perquisites.")
In Burke v. Elmore, 341 Ark. 129, 132-33, 14 S.W.3d 872 (2000), the court made clear that cities are bound strictly to observe the legislative limitations on their authority:
 This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. City of Little Rock v. Cash, supra. Recently, this court summarized what powers can be exercised by a municipality:
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
Having expressed these concerns, I must stress that I am not prepared officially to opine that a severance package would necessarily constitute a violation of law. Other jurisdictions have not adopted any blanket proscription against severance payments, instead focusing on the provisions of the particular contract at issue, as well as the circumstances attending the termination, retirement or resignation. The fact-intensive nature of any such inquiry is illustrated in the following provisions of a city manager's contract with a Florida municipality:
 It is understood that the City Council does have the authority and discretion to terminate the Employee at any time subject to Sections 3.A and 3.B of this agreement.
 Section 3.A establishes a schedule for severance benefits if the termination takes place during a time the city manager is willing and able to perform his duties, but provides that there will be no such benefits if the city manager is terminated for committing an "illegal act." Section 3.B provides that the city manager, at his option, may consider himself "terminated" if the City does certain things, such as reduce his salary.
City of Titusville v. Ackley, 770 So.2d 755, 756 (Fla.App. 2000) (footnote omitted). In a footnote addressing the possible nature of the referenced "illegal act," the court remarked:
 Hence, if the City wished to avoid the consequence of the severance provision, and if it had the grounds, it could charge the city manager with confiscating public property or failing to perform his duties by not regularly coming to work or refusing to attend obligatory meetings. If the city manager wished to contest the charges, he would, of course, be entitled to a hearing. Whether the city manager would receive severance benefits would depend on the outcome of the hearing.
Id. at 756 n. 1.
It is possible that an Arkansas court might approve a similar or different severance arrangement between a city and its city manager — subject, of course, to the statutory condition that the city manager remain an at-will employee. However, if permissible, any such negotiated provision would need to reflect a reasonable exercise of the limited discretion afforded the governing bodies of cities and counties in expending public funds. Any abuse of that discretion, as by entering into unreasonably generous agreements or by varying from an agreement without consideration, would in my estimation invite challenge as an illegal exaction in violation of Ark. Const. art. 16, § 3. I believe a court would be particularly critical of a severance payment that was not authorized in the contract itself. Any such payment would in all likelihood be barred as an impermissible gift unless the payment represented a reasonable compromise of a disputed claim. See, e.g., Crumpv. Snead, 517 S.E.2d 384, 386 (N.C.App. 1999) (city council agreed to provide lump-sum severance payment in exchange for city manager's agreement to resign.)
Finally, I believe any unusual severance agreement, whether with a city manager or any other city, county or school district employee might be challenged as impermissibly restricting the discretion of successor governing bodies. See Fomby School District No. 26 v. Williams,203 Ark. 235, 156 S.W.2d 220 (1941) (holding that term of a previous board's consolidation agreement requiring that schools be maintained at certain locations was "surplusage" and could not bind subsequent school board);School District 18 v. Grubbs Special School District, 184 Ark. 863,43 S.W.2d 765 (1931) (contract between school districts purporting to set district boundaries invalid as restricting policymaking discretion). InPiedmont Public Service District v. Cowart, 459 S.E.2d 876, 881 (S.C. 1996), the court offered the following analysis regarding the scope of a governing body's power to commit to a particular severance package:
 The District's discretion to employ the Administrator of the District and set the terms of his employment is discretionary power which public policy demands remain unimpaired. The twenty year employment contract requiring five years severance pay even if Cowart breaches the contract is an enormous impairment of the District's power and authority and therefore cannot be binding on successor boards. See City of Hazel Park v. Potter, 169 Mich.App. 714, 426 N.W.2d 789 (1988) (contract of employment between outgoing city council and city manager that included generous severance pay provisions held void because it deprived the incoming council of power to select and appoint city manager); Falls Township v. Scally, 115 Pa.Cmwlth 56, 539 A.2d 912 (1988) (environmental control officer performed governmental duties; thus, three year employment contract entered into by outgoing board and officer not binding on successor board); Harrison Cent. Sch. Dist. v. Nyquist, 59 A.D.2d 434, 400 N.Y.S.2d 218 (1977), appeal denied, 44 N.Y.2d 645, 406 N.Y.S.2d 1026, 378 N.E.2d 126 (1978) (three year contract of employment between school district and attorney void because it binds successor boards); Valvano, 183 A.2d 450 (contract engaging broker to act as insurance advisor limited the County's discretionary powers and therefore was not binding on successor board); City of Riviera Beach v. Witt, 286 So.2d 574 (Fla.Dist.Ct.App. 1973), cert. denied, 295 So.2d 305 (Fla. 1974) (city prosecutor's two year employment contract involved governmental function and therefore was void because it extended beyond the terms of the contracting officers); 56 Am.Jur.2d Municipal Corporations, Counties Other Political Subdivisions § 154 (the appointment and removal of public officers generally is a governmental function, and a municipal council cannot engage a public officer by contract for a term extending beyond that of its own members).
As reflected in Fomby, supra, the Arkansas courts have acknowledged the significance of a governing board's independence, and I strongly suspect they would follow the court's reasoning in Cowart if inclined to countenance severance packages in any form.
However, notwithstanding the necessary independence of a governing body at any given point, it remains the case that the governing body must be able to enter into binding contracts with its employees to handle municipal affairs regardless of changes in the governing body's membership. In addressing this tension between a local government's need to make contractual commitments and its need to preserve its governing body's independence in matters of policy over time, a Michigan court recited the following hornbook law:
10 McQuillin, Municipal Corporations, § 29.101, p. 467 states:
 "Statutes and charters sometimes authorize municipal boards to make contracts which will extend beyond their own official term, and the power of the legislature in this respect is well settled. Respecting the binding effect of contracts extending beyond the terms of officers acting for the municipality, there exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist. Consequently, although a contrary rule prevails as to contracts relating to business affairs, it is generally held that, independent of statute or charter provisions, the hands of successors cannot be tied by contracts relating to governmental matters."
City of Hazel Park v. Potter, 426 N.W.2d 789, 792 (Mich.App. 1988). AsCowart reflects, a court might well determine that any contractual term providing for significant severance benefits impermissibly hamstrings future city officials in the exercise of their governmental powers.
In summary, in the absence of legislative authorization, a court might find constitutionally suspect any payment of severance benefits to a municipal employee, including a city manager. However, as illustrated byCowart, severance provisions on occasion are included in a city manager's contract. If faced with the issue, an Arkansas court might conclude that a city council or mayor is authorized to negotiate such a provision because it is sufficiently related to the conduct of municipal affairs.See A.C.A. § 14-42-307(a)(1). As a member of the executive branch of government, I cannot venture a formal opinion on this issue in the absence of legislative or judicial clarification.
Question 4: May a county pay severance packages to terminated, retiring,or resigning employees?
In my opinion, the analysis set forth in my response to Question 3 applies in all respects to public county employees.
Question 5: May a school district pay severance packages to terminated,retiring, or resigning employees?
In my opinion, the analysis set forth in my response to Question 3 applies in all respects to public school district employees.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The power of a city board to discharge a city manager at will predates Act 1790, having first been declared in Act 99 of 1921, § 12, which authorized the city manager form of government.