126 N.J. Super. 29 (1973)
312 A.2d 664
WESTCHESTER FIRE INSURANCE CO., RICHARD B. HOLCOMBE, ALICE HOLCOMBE AND WILBUR S. HOLCOMBE, PLAINTIFFS-APPELLANTS,
v.
THE CONTINENTAL INSURANCE COMPANIES, NEW JERSEY MANUFACTURERS INSURANCE CO., MOTOR CLUB FIRE & CASUALTY CO., JACKIE W. EISNER, ETC., DEFENDANTS-RESPONDENTS. ELMER RICHARD POTENT, GUARDIAN AD LITEM FOR RICHARD M. POTENT, AN INFANT, ELMER RICHARD POTENT AND CHARLOTTE POTENT, INDIVIDUALLY, PLAINTIFFS,
v.
JACKIE W. EISNER, HALLIE EISNER, ELMER EISNER, SR. AND RICHARD B. HOLCOMBE, SR., ETC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1973.
Decided November 27, 1973.
*32 Before Judges CARTON, SEIDMAN and GOLDMANN.
Mr. Edward B. Meredith argued the cause for appellants Westchester Fire Insurance Co. and Holcombe (Messrs. Meredith, Meredith & Chase, attorneys).
Mr. Andrew J. Smithson argued the cause for respondent The Continental Insurance Companies (Messrs. Dietrich, Stockman & Lake, attorneys).
Mr. Richard D. Catenacci argued the cause for respondent New Jersey Manufacturer's Insurance Company (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys).
Mr. Jerome S. Lieb argued the cause for respondents Motor Club Fire & Casualty Co. and Eisner (Messrs. Lieb, Teich & Berlin, attorneys).
Mr. Frank V. Walsh, Jr. argued the cause for plaintiffs Potent. (Mr. Gregory V. Hopkins, on the brief).
The opinion of the court was delivered by CARTON, P.J.A.D.
This case presents novel questions as to coverage afforded under automobile and homeowner's insurance policies by reason of the act of a passenger who threw a stick from a moving automobile, which struck a passing bicyclist. The basic issue is whether the injury sustained by the bicyclist was one "aris[ing] out of the ownership, maintenance or use of the owned automobile * * *" within the *33 meaning of the automobile insurance policies. Corollary to this issue is the applicability of an exclusionary clause of the homeowner's policy making its coverage inapplicable to "the * * * use of automobiles * * *."
The underlying facts are stark and briefly stated. Jackie Eisner was driving his father's automobile. Richard Holcombe, a passenger in the right rear seat, threw a piece of wooden molding with a nail in it out of the right rear window. The stick struck Richard Potent, an infant, above the left eye as he was riding his bicycle.
The Potent boy, through his guardian ad litem, and his parents per quod, brought action against Eisner, the driver of the automobile, and his parents, and also against the passenger, Holcombe, and his parents, on various theories:
(1) against Jackie, the driver, because Holcombe, the passenger, threw the piece of wood from the car allegedly with his knowledge and consent;
(2) against the Eisners, Sr. for negligence in the care, control and discipline of their child;
(3) against Jackie for placing the piece of wood in the car knowing that it would constitute a nuisance because of temptation to a passenger to throw it from the car;
(4) against passenger Holcombe for negligently throwing it from the vehicle, and
(5) against Holcombe's parents for negligence in the care, control and discipline of their child.
Motor Club Fire & Casualty Company and Westchester Fire Insurance Co. had issued homeowner's insurance policies for the Eisners and Holcombes, respectively. They filed answers on behalf of these defendants.
Later Westchester and the Holcombes sought a declaratory judgment to declare that (1) the National Union Insurance Company (Eisner's automobile liability carrier) was obligated to defend the action and pay any judgment which might result; (2) New Jersey Manufacturers was obligated to defend and pay its proportionate share of any judgment, *34 or alternatively, to provide excess insurance coverage, and (3) the Westchester Fire and Motor Club homeowner's policies were inapplicable.
On cross-motions for summary judgment in the declaratory judgment action, the trial judge ruled that the homeowner's insurance carriers, and not the automobile liability insurance carriers, were obligated to defend and be responsible for any ensuing judgment. Motor Club, the Eisners, Westchester Fire and the Holcombes all appealed.
We consider first whether coverage is afforded under the automobile policies. Parenthetically, we note that the automobile carriers for the Eisners and the Holcombes have agreed as to which has primary responsibility in the event coverage under the automobile policies is held to exist. Hence we need not consider the question of primary and excess coverage.
Both Eisner, Sr. and Holcombe, Sr. had standard family automobile liability policies on their cars. The Eisner policy was issued by National Union Insurance Company, with policy limits of $25,000 and $50,000. Holcombe, Sr.'s New Jersey Manufacturers' policy had limits of $250,000 and $500,000.
Under the terms of each policy the carrier agreed with the insured named in the declaration (Eisner, Sr. and Holcombe, Sr., respectively),
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. bodily injury * * * sustained by any person * * *
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and * * * defend any suit alleging such bodily injury * * * and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * *. [Emphasis added]
The carrier also agreed to insure the following:
(a) With respect to the owned automobile,
(1) the named insured and any resident of the same household,

*35 (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
(b) With respect to a non-owned automobile,
(1) the named insured,
(2) any relative * * *;
(c) Any other person or organization legally responsible for the use of
(1) an automobile * * * not owned * * * provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such automobile * * *.
The definitions clause of the policies provided that "`named insured' means the individual named in * * * the declarations and also includes his spouse, if a resident of the same household"; that "`non-owned automobile' means any automobile * * * not owned by the named insured or any relative * * *;" and that "`use' of an automobile includes the loading and unloading thereof."
The critical issue is whether the injury allegedly sustained by plaintiff Potent comes within the scope of the policy provision "arising out of the ownership, maintenance or use" of the automobile, and whether the insurance company is obligated to "defend [the] suit alleging such bodily injury."
Our research has produced little authority in New Jersey on the meaning of the provision. There is a sharp division of authorities in the courts of other jurisdictions as to its proper interpretation. See Annotation, "Automobile Liability Insurance-Risks," 89 A.L.R.2d 150 (1963), which collects many of the cases.
While there is no New Jersey case directly in point, certain cases have supplied certain guidelines. We start with the well settled proposition that if the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, that which will sustain coverage will be applied. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). Specifically, it has been held that the language of the omnibus clause of a policy must be *36 construed broadly in favor of the insured and injured persons to effectuate a strong legislative policy of assuring financial protection for innocent victims of automobile accidents. Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of New York, 33 N.J. 507, 512-513 (1960). Applicable also is another settled principle, that purchasers of insurance are entitled to "the broad measure of protection necessary to fulfill their reasonable expectations." In the language of our Supreme Court, "their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'" Kievit v. Loyal Protection Life Ins. Co., 34 N.J. 475, 482 (1961).
We consider, then, the language of this provision in light of these general rules of interpretation. In the phrase "ownership, maintenance or use," the term "use" is the key word. One commentator has remarked that this term is a broad catch-all designed to include all proper uses of the vehicle not falling within the term "ownership [and] maintenance." See Baudin v. Traders and Gen. Ins. Co., 201 So.2d 379 (La. Ct. App. 1967), writ refused 251 La. 224, 203 So.2d 557 (1967); see also Annotation, 89 A.L.R.2d at 163, supra.
The court's comment in Indemnity Ins. Co., supra, 33 N.J. at 513, on the word "use" in the omnibus clause also sheds some light on its meaning here:
* * * We think that in this context the words use and operation are not synonymous. The use of an automobile denotes its employment for some purpose of the user; the word "operation" denotes the manipulation of the car's controls in order to propel it as a vehicle. Use is thus broader than operation. Brown v. Kennedy, 141 Ohio St. 457, 48 N.E.2d 857 (Sup. Ct. 1943); Maryiand Casualty Company v. Marshbank, 226 F.2d 637 (3 Cir.1955). One who operates a car uses it, Cronan v. Travellers Indemnity Co., 126 N.J.L. 56 (E. & A. 1941), but one can use a car without operating it. An automobile is being used, for example, by one riding in it although another is driving.
In the present case it seems clear that the Eisner vehicle was being used by the driver as well as by his passenger. *37 Gronquist v. Transit Casualty Co., 105 N.J. Super. 363 (Law Div. 1969). As Justice Proctor stated in Indemnity employment for some purpose of the user * * *."
Ins. Co., supra at 513 "[t]he use of an automobile denotes its
Thus, in the present case the Eisner vehicle was employed for purposes of transportation  that is, to carry those in it from one place to another. Allegedly, it was also being used by Eisner, Sr. for the transportation of tools and materials.
The more difficult question is the meaning of the phrase "arising out of." The specific inquiry is whether the injury allegedly sustained by the infant plaintiff arose out of defendants' use of the automobile. The automobile insurance carriers maintain that the motor vehicle in this case was simply the situs of an accident which could have occurred anywhere. They reason that the injury resulted, not from the use of the automobile, but from Holcombe's intentional act in throwing the stick from the vehicle. Consequently, they urge, the words "arising out of the * * * use * * *" must be interpreted to require a showing of causality between the injury and the use before coverage exists.
We agree with the automobile carriers' contention that the phrase "arising out of the * * * use" is not synonymous with "while riding." As one court commented, such a construction would write from the contract the words "arising out of." See Speziale v. Kohnke, 194 So.2d 485 (La. App. 1967).
But we do not agree that the words "arising out of the * * * use" require or justify the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strict legal sense, of the use of the automobile. We think that such a construction would do equal violence to the normal meaning of those words. Specifically, the policy does not require that the injury be directly or proximately caused by the automobile itself or by its motion or operation. If such a meaning was intended to be projected by this important clause of the standard family automobile policy, it is difficult to understand why a phrase which clearly conveyed the *38 idea of proximate causation, such as "caused by" or "resulting from," was not employed.
We consider that the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. See 7 Am. Jur.2d, § 82 at 387 (1963). Whether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case.
We are satisfied that such a relationship between the alleged injury and defendants' use of the automobile was presented by the allegations of the complaint.
It is true that the direct cause of the injury was Holcombe's act in throwing the stick from the car. However, it would seem to make no difference, so far as insurance coverage is concerned, whether the stick blew out of the window, fell out, or was pushed or thrown out. The evidence of the trial will, of course, determine whether that act was intentional or not. In this connection we observe that the test is not what the ultimate fact may be as to the cause of the injury, but whether the allegations of the complaint on their face fall within the risk insured against. See Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512 (1965). We note that there is nothing to suggest Holcombe had any intention of causing bodily harm to plaintiff or any other person.
In our mobile society the act of throwing or dropping objects from moving vehicles is not such an uncommon phenomenon that such occurrence may not be anticipated, nor so inconsequential *39 that members of the public need no financial protection from the consequences thereof. However antisocial such conduct may be, everyday experience tells us that various objects are thrown or permitted to fall from moving vehicles. Common examples are lighted cigarettes and cigars, food and drink containers, and other debris. Any one of such objects has a potential for injury to persons on and along the highway. It is of some significance that the Legislature has seen fit to prohibit the loading of vehicles in such a manner as to permit them to spill or scatter their contents on the street. N.J.S.A. 39:4-77. In the same vein, the Legislature has proscribed the throwing or dropping of objects from vehicles while on the highway. N.J.S.A. 39:4-64.
In our view, although Holcombe's act in throwing the stick from the automobile may not have been foreseen or expected, it was a sufficiently foreseeable consequence of the use of the vehicle to mandate coverage under the terms of the policies. We think it was within the reasonable expectation of the parties that the insureds be provided with protection against the consequences of such an act. We think also that a member of the public who sustained injury as a result of such an unfortunate occurrence might reasonably be expected to look to the vehicle and those using it as the source of redress.
This interpretation is consonant with the general rule of construction of insurance policies referred to above  that policy language which permits more than one construction must be liberally construed in favor of the insured to provide coverage. It also comports with the reasonable expectation of the parties as to the scope of coverage to be provided under these policies.
Decisions of other jurisdictions are not greatly instructive in view of the strong legislative policy of this State of affording wide coverage to innocent victims of automobile accidents under the omnibus clause. Although there is a dearth of case law dealing with the ejection from vehicles of objects which are normally harmless, the recent case of Wyoming *40 Farm Bureau Mutual Ins. Co. v. State Farm Mutual Liab. Ins. Co., 467 F.2d 990 (10 Cir.1972), is apposite. There a group of teenagers had been riding in an automobile driven by Sinner. Lorenzen, a passenger sitting in the right rear of the car, threw an empty vodka bottle from the vehicle which struck the curb, shattered and caused an eye injury to a bystander. Sinner testified that he was not aware the bottle was being thrown from the vehicle, but other testimony indicates that he was. After reviewing the facts and law, the court held both Sinner and Lorenzen "were thus shown to have been culpable and at the same time to have been using the vehicle within the meaning of the State Farm policy."
We observe that a considerable number of cases dealing with the meaning of this clause involve gunshots and ejection of bombs, firecrackers and other intrinsically dangerous objects from motor vehicles. See Annotation, 89 A.L.R.2d 150, supra. Generally, the courts in such cases hold that no coverage exists. Such courts have found it difficult to contemplate any causal connection between the discharge of guns or other explosive devices and their happenstance location in the car. Cases of this kind are readily distinguishable from the present. The stick which was thrown cannot fairly be said to be in the same category of intrinsically dangerous objects as guns and explosive devices. Hence we need not decide whether coverage might also exist in New Jersey under those circumstances.
We turn now to the question whether coverage is extended under the homeowner's insurance policies issued to Eisner, Sr. and to Holcombe, Sr. for the injury allegedly sustained by plaintiff.
The homeowner's policy defining the "insures" to include the named assured (among others), and residents of his household under the age of 21 in the named assured's care. The policy specifically provides liability coverage with respect to animals and watercraft owned by an insured and with respect to farm tractors.
*41 In the general liability provision the carrier agrees to provide:
1. COVERAGE E  PERSONAL LIABILITY:
(a) Liability: to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.
The apparent broad reach of this provision is greatly decreased, however, by reason of numerous exclusions contained in the homeowner's policy. The policy expressly provides that:
[T]his Policy Does Not Apply:

* * * * * * * *
(b) Under Coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles * * *.
We recognize that the general rule of construction of exclusions in insurance policies is that they must be strongly construed against the insurer. However, we may not disregard their clear import and intent.
Homeowner's policies of the kind here involved are of relatively recent origin. Their growth and development can be generally ascribed to the rise of tort claims of the kind made against homeowners and their families, and the need for wider protection than that afforded under ordinary residential liability policies. Although the homeowner's policy is not confined to protection for risks arising strictly out of the use of residential premises, it is, as the name suggests, home-oriented.
It seems clear to us that the language in the policies is mutually exclusive and that, as used in the homeowner's policy, is specifically designed to exclude the coverage provided *42 under language in the standard family automobile policy for injuries arising out of the use of the motor vehicle insured thereunder. The significance of the exclusion in the homeowner's policy of coverage relating to use of automobiles is underscored by the specific inclusion of coverage with repect to animals, watercraft and tractors.
We think that an interpretation which excludes coverage in the present case is in keeping with the reasonable expectations of the parties to the homeowner's insurance contract.
The net result is that the automobile carriers are required to defend and provide coverage in the actions brought by plaintiff Potent et al. against the Eisners and the Holcombes. The carriers which issued the homeowner's policies are not required to do so.
The judgment is reversed.