PATRICK S. HENSLEY AND CHARLES E. HENSLEY

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, PATRICK S. HENSLEY and CHARLES W. HENSLEY, Appellants

No. 76-2007

United States Court of Appeals

Third Circuit

Argued December 9, 1976

Filed March 4, 1977

[28] Id. at § 531(b).

Joseph L. Costello, Esq. (Bryant, Costello, Burke & Scott), Christiansted, St. Croix, V.I., *for appellant*

James L. Hymes, III, Esq. (Grunert, Stout, Hymes & Mayer), Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, GIBBONS and HUNTER, *Circuit Judges*

## OPINION OF THE COURT

GIBBONS, *Circuit Judge*

In this suit to recover the death benefits provided in a specified hazards accident insurance policy the plaintiffs Patrick and Charles Hensley appeal from a summary judgment for the insurer. Plaintiffs are the children of the deceased insured and are the named beneficiaries of the policy. Judgment was granted below on the ground that the death was not within the coverage of the policy.

The policy of insurance is divided into two parts. Part I is captioned "Insuring Agreement," and Part II is captioned "Provisions." The relevant part for purposes of decision is Part I, set forth in pertinent part in the margin.[1]

---

[1] [S]ubject to all the exclusions, provisions and other terms of this policy, the Company hereby insures the person named above (herein called the Insured) against loss indicated as covered in the following Schedule of Coverages resulting directly and independently of all other causes from bodily injuries (herein called "such injuries") caused by accident occurring during the term of this policy and arising out of the specific hazards named in page 2 hereof.         *         *         *

Schedule of Coverages

The insurance afforded is only with respect to the coverage(s) for which a specific amount is stated ... in the following schedule. ...

| Coverage | Amount | Premium |
|---|---|---|
| A. Accidental Loss of Life | Principal Sum $50,000.00 | $62.50 |

*         *         *

CONVEYANCE HAZARDS

1. Specific Hazards

The insurance afforded with respect to such injuries applies only while

The beneficiaries contend that the decedent suffered an accidental death while alighting from an automobile. It is undisputed that decedent was killed by a shotgun blast as or shortly after she stepped from the passenger seat of an automobile driven by her husband. One of her children was the assailant, and he also killed her husband. The facts were established by requests for admission, and both sides moved for summary judgment. The insurer contended (1) that the shooting did not take place while the decedent was alighting from the automobile, but thereafter, and (2) that the accidental death was not within the specified hazards. The insurer conceded that the shooting resulted in an accidental death.[2] The district court concluded that on the undisputed facts the decedent was alighting from the car when she was shot. Nevertheless the court granted summary judgment for the insurer on the ground that the accidental death was not within the specific hazards insured against. The court reasoned that the language of the specific hazards clause required some causal nexus between the accidental death and the use of the vehicle.

Certainly the plain language of the policy does not require this reading. The insured event, which in this case is conceded, is an accidental death. That event is insured against "only while the Insured is . . . alighting from, any . . . land conveyance." The event took place while the insured was alighting from such a vehicle. Moreover when the insurer intended to exclude some accidental deaths which might otherwise have been covered by the insuring

---

the Insured is
    (a) . . . alighting from, any land . . . conveyance
                 *        *        *

2. **Exclusions**
    The insurance afforded with respect to the hazards described above shall not cover loss caused by or resulting from [specified activities or hazards, none of which are applicable to this case].

[2] It is well established that an intentional shooting which occurs without fault of the insured is an accident within the meaning of an accident and health policy. 10 Couch on Insurance 2d §§ 41:13, 41:35 (1962).

agreement it chose perfectly appropriate language: "shall not cover loss caused by or resulting from" specified activities or hazards. The distinction in language between the two clauses, in a casualty policy as distinguished from a liability policy, was obviously intentional. Purchasers of casualty insurance, including life insurance, expect that if the insured event occurs within the time and at the place of coverage they will be paid. They do not expect to have to litigate any nexus or causal connection between the insured event and the activities of third persons.

A leading authority on the law of insurance describes the difference in the two forms of coverage:

> In the modern automobile liability policy, the insurer usually agrees to pay, on behalf of the insured and within specified limits, all sums which the insured shall become legally obligated to pay as damages because of personal injury to or death of any person, or because of injury to or the destruction of property caused by accident and arising out of the ownership, maintenance, or use of the vehicle or vehicles insured. . . .
>
> Liability policies may also provide for medical payments caused by accident to a person injured "while alighting from or entering" the insured vehicle or while "in or on" or "in or upon" the vehicle; such payments, however, do not depend upon the liability of the insured for the accident and accordingly may more properly be characterized as accident insurance rather than liability insurance. 12 Couch on Insurance 2d § 45:27, p. 125 (1962) (footnote omitted).

Another volume of the same work deals with accident and health insurance. There the author writes:

> An automobile accident policy covering death sustained by accidental means by the insured "while driving, riding in or on an automobile" insures against all accidental injury occurring during the period covered and is not confined to risks arising out of and incident to the operation of an automobile. Accordingly, injuries received by being accidentally shot while seated at the wheel of an automobile being used to transport hunters are the "result of

16

operating or riding in an automobile."[20] Likewise, the fact that the automobile had come to a stop at the end of the journey and the insured, in preparation for leaving the car, was then shot by the accidental discharge of a pistol which she was taking out of the glove department did not take the accident out of the coverage of such a policy.[1]

[20] Tex: Dorsey v. Fidelity U. Cas. Co. (Tex. Civ. App.) 52 S.W.2d 775, error dismissed.

[1] US: Provident L & A Ins. Co. v. Nitsch (C.A. 5 Tex.) 123 F.2d 600, 138 A.L.R. 399.

10 Couch on Insurance 2d, § 41:286 (1962) (footnote 19 omitted). See also Harper v. Mutual of Omaha, 232 So.2d 96 (La. App.), writ refused, 233 So.2d 562 (La. 1970).

The failure of the district court to observe this distinction between casualty insurance and liability insurance led it, in construing the policy, to rely upon authorities in other jurisdictions, all of which dealt with the scope of the duty to defend or indemnify under an automobile liability insurance policy.[3] The long and the short of it that the district court treated a time and place accidental death policy as if it were an automobile liability policy.

The insurer urges that the language in the opening clause of the insuring agreement, "arising out of the specific hazards named in page 2 hereof" should be read as if it said "arising out of driving in or alighting from an automobile." But the specific hazard named on page 2 is injury while the insured is alighting. We are not free to rewrite the policy in the insurer's interest. Indeed the rule of construction is to the contrary. The insurer's choice of language should be construed liberally in favor of coverage.

The judgment appealed from will be reversed and the

[3] The Court referred to Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 312 A.2d 664 (1973); Ins. Co. of North America v. Royal Indemnity Co., 429 F.2d 1014 (6th Cir. 1970); Wirth v. Maryland Cas. Ins. Co., 368 F.Supp. 789 (W.D. Ky. 1973); Mason v. Celina Mut. Ins. Co., 423 P.2d 24 (Colo. 1967); United States Fidelity & Guaranty Co. v. Western Fire Ins. Co., 450 S.W.2d 491 (Ky. 1970); Indiana Lumbermens Mut. Ins. Co. v. Statesmen Ins. Co., 291 N.E.2d 897 (Ind. 1973). But see, e.g., Fidelity & Casualty Co. of New York v. Lott, 273 F.2d 500 (5th Cir. 1960); Red Ball Motor Freight v. Employees Mut. Liab. Ins. Co., 189 F.2d 374 (5th Cir. 1951); Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (E.D. Mich. 1961).

case remanded to the district court for the entry of a judgment for the plaintiffs.

---

SEITZ, *Chief Judge,* dissenting

The contract states that the company only insures against loss which arises out of the enumerated "specific hazards." The problem is what the phrase "specific hazards" means. If the specific hazard here is *injury* while alighting from an automobile, the insurance company must be held liable, since Mrs. Hensley's death arose from injuries she sustained while alighting from an automobile. On the other hand, if the specific hazard is alighting from an automobile, plaintiffs may not recover, since they have not demonstrated that their mother's death stemmed from the fact that she was alighting from an automobile.

The word "hazard" itself offers little assistance, since it can mean either the risk created by an activity—here the risk is injury while alighting—or the activity which creates the risk—alighting. Webster's New International Dictionary (3d ed. 1968). However, the contract read as a whole gives evidence that the insured should expect coverage only against risks created by virtue of the fact he engages in activities such as alighting from an automobile.

The contract says that the company insures against "loss . . . resulting . . . from bodily injuries . . . arising out of the specific hazards named . . ." If the specific hazard here were injury while alighting, the company would be deemed to insure against "loss . . . resulting . . . from bodily injuries . . . arising out of" injury while alighting. This reading of the contract, with its recapitulation of the word "injury", strains common sense. On the other hand, it makes perfect sense for the company to state that it will provide insurance against "loss . . . resulting . . . from bodily injuries . . . arising out of" alighting from an automobile.

18

The majority emphasize the fact that this is a casualty policy, and not a liability policy. But while a requirement of causal connection may be standard with liability policies, it is not out of place in the area of casualty insurance. A purchaser of insurance might very well want to insure only against such risk of accident as is created by virtue of engaging in a particular activity.

The majority also rely on the rule that insurance contracts, where ambiguous, are to be construed against the insurer. This rule, however, does not relieve the courts from giving a reasonable construction to insurance agreements.